Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 Popular Name RIVER BOAT GAMBLING AND PUBLIC SCHOOL FUNDING USING NET GAMING REVENUE TAX Ballot Title PROVIDING FOR THE OPERATION OF GAMBLING AND GAMING DEVICES AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS ON A CHANCE, WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH THE USE OF COMMONLY CALLED GAMING DEVICES AND GAMBLING TO INCLUDE ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OR ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS USED IN ANY MANNER, GAMING TABLES OF ANY KIND FOR THE USE OF DICE USED IN ANY MANNER AS A VOLUNTARY OPTION TO OPERATE ANY ONE OR MORE OR ALL OF THE AFOREMENTIONED GAMING DEVICES AND GAMBLING ON WATER VESSELS ONLY ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE BY THE "ARKANSAS RIVER BOAT CASINO COMPANY"; PROVIDING NO RESTRICTION ON THE TIME OR DAYS FOR OPERATING GAMBLING AND GAMING DEVICES ON WATER VESSELS OPERATED ONLY ON NAVIGABLE WATER WAYS AND PUBLIC LAKES BY THE ARKANSAS RIVER BOAT CASINO COMPANY; PROVIDING FOR THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES DURING THE OPERATING TIME OF GAMBLING AND GAMING DEVICES ON WATER VESSELS OPERATED ONLY ON NAVIGABLE WATER WAYS AND PUBLIC LAKES BY THE ARKANSAS RIVER BOAT CASINO COMPANY; PROVIDING NO LICENSES OR FEES SHALL BE REQUIRED BY THE STATE, OR ANY SUBDIVISION THEREOF, TO OPERATE GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE; PROVIDING FOR NO LICENSES OR FEES SHALL BE REQUIRED BY THE STATE, OR ANY SUBDIVISION THEREOF, TO SELL OR SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES DURING THE OPERATION OF GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES ONTO A WATER VESSEL WITHIN A COUNTY OF THE STATE; PROVIDING NO PERSON UNDER THE AGE OF 21 SHALL PARTICIPATE IN CASINO GAMING ON ANY WATER VESSEL OPERATED ON NAVIGABLE WATER WAYS AND PUBLIC LAKES BY THE ARKANSAS RIVER BOAT CASINO COMPANY WITHIN THE STATE; DEFINING THE "ARKANSAS RIVER BOARD CASINO COMPANY" AS A SINGLE UNINCORPORATED ENTITY REGISTERED TO DO BUSINESS IN THE STATE AS RECORDED IN THE PULASKI COUNTY CLERK'S OFFICE UNDER THE NAME OF BARRY L. EMIGH, AUTHORIZED AS PROVIDED IN THIS AMENDMENT, TO OPERATE AND CONDUCT CASINO GAMBLING AND GAMING DEVICES ON WATER VESSELS ONLY ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE OF WHICH COMPANY IS TRANSFERABLE IN PART OR WHOLE BY SAID PERSON; PROVIDING NO TAXES, ASSESSMENTS OR FEES ON ANY WATER VESSEL, AND THE CONTENTS WITHIN ANY VESSEL, OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY USED FOR GAMBLING PURPOSES; PROVIDING NO OTHER TAXES ON THE GROSS AND NET GAMING INCOMES OF THE ARKANSAS RIVER BOAT CASINO COMPANY OPERATING GAMBLING AND GAMING DEVICES ON NAVIGABLE WATER WAYS AND PUBLIC LAKES BY THE STATE OTHER THAN THOSE SPECIFIED HEREIN; PROVIDING AN 18% PERCENT TAX ON THE TOTAL NET GAMING REVENUES FROM EACH VESSEL OPERATING GAMBLING AND GAMING DEVICES WITHIN THE STATE BY THE "ARKANSAS RIVER BOAT CASINO COMPANY" SHALL BE PAID TO THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO BE ALLOCATED AS FOLLOWS: 8% OF THE NET GAMING REVENUE TAX SHALL BE PAID TO THE STATE; 6% OF THE NET GAMING REVENUE TAX TO THE COUNTY FROM ANY VESSEL OPERATING GAMBLING AND GAMBLING DEVICES WITHIN THAT COUNTY AND DIVIDED EQUALLY FROM THOSE VESSELS OPERATING GAMBLING WITHIN THE CITY LIMIT OF A CITY; 12% OF THE TOTAL NET GAMING REVENUE TAX SHALL BE DIVIDED EQUALLY AND DISTRIBUTED TO THOSE COUNTIES NOT HAVING A GAMBLING OPERATION ON ANY WATER VESSEL OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY WITHIN THOSE COUNTIES; 16% TO BE DIVIDED BY THE PREVIOUS YEAR'S NUMBER OF STUDENTS ATTENDING ALL PUBLICLY FUNDED UNIVERSITIES, COLLEGES AND COMMUNITY COLLEGES WITHIN THE STATE AND DISTRIBUTED TO EACH OF THOSE SCHOOLS BASED UPON THE NUMBER OF STUDENTS ATTENDING THAT SCHOOL FROM THE PREVIOUS YEAR; 58% TO BE DIVIDED BY THE PREVIOUS YEAR'S NUMBER OF STUDENTS K THROUGH 12TH GRADES AND DISTRIBUTED TO EACH SCHOOL DISTRICT BASED UPON THE NUMBER OF STUDENTS WITHIN THAT SCHOOL DISTRICT FROM THE PREVIOUS YEAR; PROVIDING FOR THE ANNUAL AUDITING OF THE ARKANSAS RIVER BOAT CASINO COMPANY BOOKS, RECORDS, AND FINANCIAL AFFAIRS BY THE STATE AUDITOR; PROVIDING THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. The popular name is, moreover, misleading in my view. A number of additions or changes to your ballot title are, I believe, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. §7-9-107(b).
The term "River Boat Gambling" in your proposed popular name is, in my opinion, misleading because it infers that the authorized gambling activities will be limited to boats operated on rivers, whereas the text of your proposed amendment authorizes gambling on "any water vessels only on navigable water ways and public lakes. . . ." It seems clear from this language that river boats are not the only vessels authorized to operate the gambling activities.
I believe the most significant ambiguity in the text of your proposal involves the entity referred to throughout as the "Arkansas River Boat Casino Company." The definition of this entity (set forth in Section 7) raises several questions. According to the definition, the Arkansas River Boat Casino Company is:
 . . . the one single company existing as an unincorporate [sic] entity registered to do business in the state as recorded in the Pulaski County Clerk's Office under the name of Barry L. Emigh authorized, as provided in this amendment, to operate and conduct casino gambling and gaming devices on water vessels. . . .
I am uncertain as to the precise meaning of this definition. This language appears to infer that there is a separate entity/company in existence with sole authority under the amendment to operate and conduct the authorized gambling activities. However, I am uncertain whether any actual entity or company has been "registered." This uncertainty arises from the statement that the company is "registered to do business . . . under the name of Barry L. Emigh." This suggests that you may have made a filing in order for you to conduct or transact business under this name.See, for example, A.C.A. § 4-70-201—206 (doing business under an assumed name). If that is the case, and you are authorized to transfer the business which is operated under this assumed name (as provided for in the definition), then it would seem that the voters may not know who in the future will be conducting the gambling operations. The voters may also have a legitimate interest in the terms of or the circumstances surrounding any transfer of the business. This is undoubtedly critical information for a fair understanding of the issues presented by your proposed amendment.
This distinction is, in my view, critical to the voters' understanding of what is being authorized under your proposal. The precise identity of the entity or individual who will have exclusive rights to the authorized gambling operations will, I believe, give the voter serious ground for reflection. As such, this must be very clear from the language of the amendment. Because I am uncertain as to the intent of your proposal in this regard, I cannot summarize this aspect of the amendment.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General